Asa B. Crowe, Respondent, v. Charles F. Gallenkamp, Administrator of Estate of M. G. Breckinridge, Deceased, Appellant.

St. Louis Court of Appeals, May 15, 1894.

Services in Nursing a Deceased Person: ELEMENTS OF COM-PENSATION ON A QUANTUM MERUIT. In an action or proceeding for compensation, on a *quantum meruit* for services rendered in nursing a deceased person, the plaintiff or claimant may show in enhance-ment of his claim the emission of disagreeable odors by reason of the disease of the person waited upon; but he is not entitled to show damages to his residence, in which he kept the deceased person, in consequence of such odors.

*Appeal from the Franklin Circuit Court.*—Hon. Rudolph Hirzel, Judge.

REVERSED AND REMANDED.

*John W. Booth* for appellant.

The recovery in this action is to be had according to the value of the services, not the benefit the employer derives therefrom, or the damage that may ensue to the person performing the service. 2 Suther-land on Damages [2 Ed.], sec. 679; Wood's Master and Servant [2 Ed.], sec. 67; *Chiles' Executors v. Craig*, 4 Dana, 544.

*J. C. Kiskaddon* for respondent.

Every fact which tended to enhance the merit and value of the services rendered was properly admissible. *Rose v. Spies*, 44 Mo. 20; *Adams v. Adams*, 23 Ind. 50, 52, 53; *Smith v. Smith*, 43 N. H. 536–538; 1 Hous. Civil Cases (Del.), 36, 38; *Clussman v. Merkel*, 3 Bosw. 402.

BIGGS, J.—This is a proceeding commenced in the probate court to have an account allowed against the estate of the deceased. The demand was for the value of the services of the plaintiff and his wife in nursing and taking care of the deceased during his last illness and for other items which appear from the following complaint:

"Plaintiff, as amendment of the statement and cause of action filed by plaintiff in the court aforesaid on the seventh of December, 1891, states that the estate of deceased is indebted to plaintiff as follows: That some time prior to the sixteenth day of April, 1891, deceased became ill with a loathsome and fatal disease, which subsequently, on the thirteenth of October, 1891, caused his death; that on the nineteenth of April, 1891, plaintiff conveyed deceased to St. Louis to the hospital there; that on the twentieth day of April, 1891, plaintiff remained in St. Louis with deceased while a surgical operation was performed; that on the twenty-sixth of April, the third, eleventh and sixteenth days of May, the twenty-ninth of July and the fourth of August, 1891, the plaintiff made on each day other trips to St. Louis from his home, in and about caring for said deceased during his illness.

"That all said services were done by plaintiff at the request of deceased, and amount to eleven days so employed; and said services were and are reasonably worth $3 per day, aggregating $33.

"That on the fourth of August, 1891, at the urgent request of deceased, it having been determined that the disease with which he was suffering was incurable, plaintiff took deceased from the hospital in Louis, and conveyed him to his (plaintiff's) residence, and kept him there continuously from said last

date until the death of deceased, which occurred
October 13, 1891; that for about three weeks from the
fourth of August, 1891, plaintiff and his wife took care
of deceased; that this care employed some one all the
time, and a large part of the time two persons; that
the stench from the disease with which deceased was
suffering became so unbearable that plaintiff was com-
pelled to, and did, send his wife and child away from
home for a period of two weeks; that no one person
could remain with and care for deceased by reason of
the offensive character of the disease, and consequently
plaintiff was compelled to employ at first one, and
afterwards two attendants upon deceased; that no one
could be induced to come to plaintiff's house and do
the cooking, and consequently plaintiff had to do the
cooking himself during the absence of his wife, and at
all times he lost his whole time; that during all this
time plaintiff, and, while plaintiff's wife was at home,
his wife and child, were compelled to live in an
atmosphere loathsome to the senses by reason of the
stench arising from the disease with which deceased
was suffering; that, since the death of deceased, the
room in which deceased remained while at plaintiff's
residence, and in which he died, has been thoroughly
and repeatedly washed, fumigated, aired and white-
washed, but so saturated has it become with the stench
arising from said disease that it has been, and is now,
entirely unfit for use.

"That, by reason of the peculiar circumstances
herein enumerated surrounding the last sickness of
deceased, it is impossible to itemize the value of said
care and services rendered by plaintiff during said last
sickness, or to say what each particular service is worth,
but plaintiff avers that his loss of time, board of attend-
ants, his own service and care, and care and service of
plaintiff's wife, of the deceased, and the condition of

the premises under the peculiar circumstances enumerated, was and is reasonably worth $1,500.

"Wherefore plaintiff asks for allowance of $1,533, and costs."

On a trial in the circuit court the jury returned a verdict for $1,033, and a judgment of allowance, was entered accordingly. The defendant has appealed, and complains of the action of the court in the admission and rejection of evidence. He also objected and excepted to the plaintiff's instructions.

On the trial it was admitted that the charges made by the plaintiff for trips to St. Louis to the amount of $33 were reasonable and justly due. It was also admitted that, on the fourth day of August, 1891, the plaintiff at the request of the deceased moved the latter to his (plaintiff's) house, and that the deceased was there nursed and cared for by the plaintiff until his death on the thirteenth day of October following, but the defendant denied that such services were of the value claimed.

The plaintiff's evidence tended to prove that the deceased was very intractable, fretful and disagreeable, that he suffered from a malignant cancer, and that at first the plaintiff and his wife waited on him, but afterwards it became necessary to employ two other attendants to assist in nursing him. Against the objections of the defendant the plaintiff also introduced evidence tending to prove that the cancer emitted a highly disagreeable and offensive odor or stench, which permeated the plaintiff's house and made it unpleasant to live in, and that, though the house had been repeatedly washed and whitewashed, the stench remained. Under these circumstances the plaintiff's witnesses were of the opinion that the plaintiff's services, considering the damages to the house, were of the value claimed by him.

On the question of damages the court instructed

the jury as follows: "And, in determining the compensation plaintiff is entitled to recover under the second paragraph in the statement, the jury may take into consideration the loathsome character of the disease with which said Breckinridge was suffering, and the inconvenience to plaintiff *and his family*, if any, caused by the stench coming from the disease, *and the injury, if any, to plaintiff's house by reason of the bad odor preventing the use of a room therein*, and also the nature and character of the services rendered by plaintiff and his family in taking care of the deceased under the circumstances shown, and in boarding the deceased and his attendants; and under all the circumstances, or under such of them as the jury may believe to exist, render a verdict for such compensation as they may believe to be reasonable, not exceeding $1,500." The italics are ours.

The objection made to the instruction is that the value of the plaintiff's services in nursing and caring for the deceased could not be enhanced by reason of the emission of any disagreeable odor, and that the damage, if any, to the house by reason of such odor could not be considered in determining the compensation to which the plaintiff was entitled by reason of the services performed. The first objection is untenable. The last is, in our opinion, well taken. Mr. Sutherland in his work on damages thus states the rule for the admeasurement of damages in cases like we have here: "In actions for compensation on a *quantum meruit*, the inquiry being what the party who has done the work deserves, every fact which will tend to enhance the merit and value of his services is admissible in evidence for his benefit; and every fact which will detract from their merit and value is admissible against him in behalf of the employer." 2 Sutherland on Damages [2 Ed.], p. 1531, sec. 679.

The foregoing statement of the rule readily suggests the line of inquiry on both sides of the question. If the nursing of the deceased was, by the unusual nature of the disease, attended by disagreeable and unpleasant sensations, the plaintiff had the right to show it. This is founded on the principle of adequate compensation, which is the aim and end of the law in all such controversies. But just on what principle the value of the services of the plaintiff in nursing the deceased could be enhanced by proving permanent damage to his residence by reason of the stench, we can not understand. Suppose that the deceased had taken an axe and chopped down a door of the house, or otherwise injured or damaged it, could the plaintiff have been compensated therefor in this action? We have been unable to find any case giving countenance to such a proposition. The plaintiff's action is for *services rendered*, and his recovery must be confined to *compensation* for such services, including the use of the room by the deceased, and it can not be made to include consequential damages to plaintiff's residence or family by reason of the occupancy of the room by the deceased. For this error in the instruction the judgment must be reversed. In other respects we think the case was properly tried.

With the concurrence of the other judges the judgment of the circuit court will be reversed, and the cause remanded. It is so ordered.